**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
MARK HOROWITZ and
MONTAUK U.S.A., LLC,

        Plaintiffs,

  -against-

148 SOUTH EMERSON ASSOCIATES,
LLC,

        Defendant.
-------------------------------------------------------x

Case No. _____

**COMPLAINT**

**JURY DEMAND**

COME NOW, Plaintiffs Mark Horowitz, a New Jersey citizen (hereinafter, "Plaintiff" or Horowitz"), and Montauk U.S.A., LLC, a Georgia limited liability company (hereinafter, "Plaintiff" or "MUSA"), and files their Complaint against the Defendant, and respectfully show this Court the following:

## INTRODUCTION

1. This is an action in law and equity for trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. § 1051, *et. seq.*, for dilution under the Federal Trademark Dilution Act, 15 U.S.C. §1125(c), and violations of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1115(d). As set for below, Defendant has willfully infringed on Plaintiffs' federally registered trademarks and proprietary domain names related to the famous mark THE SLOPPY TUNA, has acted as a cybersquatter by intending to profit from the goodwill associated with the mark and has unfairly competed with Plaintiff. These activities will continue unless enjoined by this Court.

## THE PARTIES

2. Plaintiff Horowitz is an individual citizen of New Jersey.

3. Plaintiff MUSA was organized on August 6, 2010 as a Georgia limited liability company. The sole member and owner of MUSA since inception was, and is, Drew Doscher, a New York resident ("Doscher"). Its Manager is Mark Horowitz, with a principal place of business in Towaco, New Jersey.

4. Defendant 148 South Emerson Associates, LLC ("Associates") is a New York limited liability company with its principal place of business in New York. Associates is presently owned 50-50 between Doscher and Michael Meyer ("Meyer"), both New York residents, and has always lacked a written operating agreement.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121.

6. This Court has personal jurisdiction over Defendant 148 SOUTH EMERSON ASSOCIATES, LLC because said Defendant does business and/or has engaged in the acts complained of herein in this Judicial District.

7. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because the claims arise in the Eastern District of New York and the Defendant is doing business in the Eastern District of New York by selling infringing products and services within this district.

## ALLEGATIONS COMMON TO ALL CLAIMS

8. Plaintiff was organized on August 6, 2010 with the intent to brand THE SLOPPY TUNA as a nationwide restaurant and bar, and use MUSA as an intellectual property holding company for various trademarks intended to be created and developed. One of the reasons MUSA was formed in Georgia rather than New York because of the more lenient franchising regulations in the state of Georgia (a non-registration state) as compared to New York (a registration state).

9. At this time, in August 2010, Doscher was partners with Michael Meagher ("Meagher"), Stephen Smith ("Smith"), and Meyer at the Wall Street firm The Seaport Group, LLC and its affiliates ("Seaport"). Seaport is an organization which handles sales and transfers on the global credit market.

10. In 2011, Doscher, Meagher, Smith, and Meyer decided to purchase property in Montauk, New York and open a seasonal restaurant and bar in the facility from May through October. The property was purchased by a New York limited liability company named 148 South Emerson Partners, LLC ("Partners"). The restaurant and bar was to be run through a New York limited liability company named 148 South Emerson Associates, LLC ("Associates"). For Associates, Doscher was to be the "hands on" partner in charge of all operations, including but not limited to employees, business hours, customer inquiries/complaints, and general operational matters.

11. While operating agreements were drafted for both Partners and Associates, only Partners had a written, executed operating agreement in which Doscher, Meagher, Smith, and Meyer were equal 25% Members.

12.     For Associates, no written agreement was ever executed, as a number of material terms were never agreed upon.  Nevertheless, the restaurant and bar opened for business in May 2011.

13.     Doscher had previous restaurant experience and handled the operations of the daily affairs.  While Meyer owns other restaurants, his involvement in Associates has been limited from the very inception by his own conduct.

14.     In early July 2012, Meagher and Smith pleaded to be bought out of their investment, as they were concerned of the impact the criminal charges, as well as the civil proceeding, and the personal liability under the SLA license, could have on their Securities and Exchange licenses, their reputation, and their business.

15.     Doscher and Meyer agreed to "buy out" Meagher and Smith, which resulted in Doscher and Meyer having a 50% interest in both Associates and Partners. Under the agreement, Meagher and Smith were paid $230,000 each in December 2012.

16.     Thereafter, a falling out occurred wherein Doscher was terminated from Seaport in January 2013. Meyer remained with Seaport.

17.     Two years earlier – in 2011 – MUSA began to federally register certain trademarks with the USPTO for use in the restaurant and bar business and for clothing, the first of which being SLOPPY TUNA'S on March 18, 2011; Serial No. 85270375.

18.     A few months later, Mark Misthal, Esq., of Gottlieb Rackman & Reisman, P.C. was retained to file an application for federal registration of THE SLOPPY TUNA and the LOGO.  On June 1, 2011, Mr. Misthal sent an e-mail to the then-owners of Associates – Doscher, Meyer, Meagher, and Smith – with a comprehensive report on his firm's search regarding the viability of registration for THE SLOPPY TUNA.  Meyer,

Meagher and Smith were all notified that MUSA would be the title owner of these trademarks and that the trademarks involved in this case were being filed on behalf of <u>Montauk U.S.A., LLC</u> and that because the application was being filed on behalf of <u>Montauk U.S.A., LLC</u>, that the trademarks:

> **could not be assigned or transferred to another entity 1) until proof that the mark is in use has been filed with the Trademark Office or 2) if the other entity buys that portion of Montauk U.S.A.'s business relating to the operation of THE SLOPPY TUNA.**

No such assignment or transfer of interest was ever effectuated to diminish MUSA's ownership of its federally registered trademarks. Associates' use of the MUSA trademarks has always been conditioned on the consent and allowance by MUSA, Doscher, and Horowitz. A true and correct copy of the Misthal June 1, 2011 e-mail is attached hereto as Exhibit A.

19. Not only were Meyer, Meagher and Smith notified that MUSA was the owner of these trademarks, but it was never an issue of contention prior to Doscher's termination at Seaport in January 2013. To the contrary, it was always understood that the "3rd LLC" was an intellectual property holding company that would license the trademarks.

20. While there were discussions on how to "split" the equity for the "3rd LLC," no agreement was ever reached prior to Doscher's termination from Seaport in January 2013. A March 2012 e-mail string among Doscher, Meyer, Meagher, and Smith (with other individuals and attorneys) is but one example of those discussions. A true and correct copy of that March 2012 e-mail string is attached hereto as Exhibit B.

21. No one ever objected to Doscher's sole ownership of the trademarks through MUSA until after he was terminated from Seaport in January 2013.

5

22. The fact that Meyer knew the trademarks were not owned by Associates is further illustrated by a May 2012 email from Terrence Flynn, an attorney who was handling issues with finalizing the proposed operating agreements. A true and correct copy of that May 8, 2012 e-mail exchange is attached hereto as Exhibit C.

23. In 2013, Meagher and Smith no longer owned any interest in Associates, and Meyer never showed up at the business. Meyer also did not seek to deliver any input in the day-to-day operations, leaving it to Doscher to manage everything.

24. At the conclusion of a third successful season, in September 2013, MUSA hired the Atlanta law firm Wagner, Johnston and Rosenthal, P.C. with significant franchising experience, to draft a formal License Agreement between MUSA and Associates. That License Agreement is attached hereto as Exhibit D.

25. MUSA has filed and registered a variety of trademarks with the USPTO subject to the License Agreement (the "Registered Trademarks"). A copy of the Certificates of Registration from the USPTO identifying MUSA as the owner is attached hereto as Exhibit E. The list of Plaintiff's Registered Trademarks licensed from Plaintiff to Associates includes the following:

6

| Mark | Registration | Registration Date |
|---|---|---|
| SLOPPY LOGO | 4102495 | February 21, 2012 |
| SLOPPY GUY | 4134497 | May 1, 2012 |
| SLOPPY POPPY | 4184289 | July 31, 2012 |
| GET YOUR SLOPPY ON | 4195785 | August 21, 2012 |
| SLOPOLOGY | 4195786 | August 21, 2012 |
| THE SLOPPY TUNA | 422772 | October 9, 2012 |
| MONTUNA | 85372168 | Serial Number |
| 99 PROBLEMS AND A BEACH AINT ONE | 85888296 | Serial Number |
| MONTICK | 85957697 | Serial Number |
| WHEN IT RAINS WE POUR | 86037062 | Serial Number |

26.   In February 2014, Meyer "objected" to Doscher's actions regarding certain employees of Associates and delegating other matters to particular individuals.

27.   Two days earlier, Doscher was served with a lawsuit from Meyer, Meagher and Smith that was filed on February 10, 2014 seeking a declaratory judgment that they each still owned 25% of Partners, in contravention of the prior agreement. The

current ownership of Partners is in dispute, as Doscher contends that in the summer of 2012 Meagher and Smith each agreed to relinquish their interests in Partners, and thereafter received $230,000 in partial payment thereto on December 10, 2012. While Doscher contends he and Meyer are the sole owners of Partners on a 50-50 basis, presently Meyer, Meagher, and Smith all contend they remain 25% owners each. These contentions remain in dispute and are currently subject to an appeal before the Appellate Division, Second Department in the State of New York. A summary of some of the various cases litigated among Doscher, Meagher, Smith, and Meyer is attached hereto as Exhibit F.

28. Notwithstanding the lawsuit, for the upcoming summer 2014 season Doscher continued to manage the business of Associates in good faith, promote the business to the best of his ability, and in the same manner and making the same decisions made the three previous years. And the 2014 season was yet another success, being profitable just as the previous three seasons. Meyer was never seen at the premises the entire 2014 season.

29. Litigation among Doscher, Meyer, Meagher and Smith continued and expanded in 2015. In one pending action in New York, Meyer sought the appointment of a receiver for Associates, and over Doscher's objection, one was in fact appointed – Charles C. Russo ("Russo"). Notwithstanding that appointment, Doscher remained in control of the operations of Associates throughout the 2015 season – which was once again an extreme success.

30. Even though Russo was appointed receiver of Associates – which was a terminable act under the license agreement – MUSA continued to allow Associates use

the Marks throughout 2015 because Doscher remained the ultimate responsible person for the operations of Associates. That recently changed.

31. On March 16, 2016, Russo applied for an order to take "immediate control over the management of and authority over the daily operations and financial management" of Associates. He was granted that authority – which also immediately ordered Doscher to "surrender control over and access to the daily operations and financial management" of Associates. A true and correct copy of that March 16, 2016 Order is attached hereto as Exhibit G.

32. On March 24, 2016, MUSA exercised its right to terminate the License Agreement. A true and correct copy of the termination letter to Associates is attached hereto as Exhibit H.

33. The following day Associates stated it refused to turn over any items, nor would comply with any of the demands. Russo disputed the termination of the License Agreement and asserted that "the License Agreement is invalid, *void ab inito*, and of no force or effect." See Exhibit I, attached hereto.

34. On March 28, 2016, Russo delivered another letter – this time to the presiding judge over the case involving the declaratory judgment action declaring the License Agreement void. See Exhibit J, attached hereto.

35. Regardless of whether the License Agreement is void, the unassailable fact is that MUSA is the title owner of the Registered Trademarks. And MUSA no longer consents to the use by Associates of the Registered Trademarks. It is therefore entitled to an injunction barring Associates from further use. Of the plethora of cases currently

pending, there is not a single cause of action that asserts MUSA is **not** in fact the owner of the Registered Trademarks.

36. Regarding domain name registration, after MUSA was formed in 2010 Plaintiff Horowitz began purchasing and registering a variety of domain names in mutual consent with Doscher and MUSA. Among the domain names registered include:

- www.thesloppytuna.com
- www.mysloppytuna.com
- www.thesloppytunastore.com
- www.sloppytunasmontaukusa.com
- www.sloppytunasmtkusa.com
- www.thesloppytunamtk.com

(Collectively, the "Domain Names")'

37. Since 2011, Horowitz and MUSA permitted Associates to use the Domain Names because Doscher was in charge of the day to day operations. That consent was terminated on March 24, 2016.

38. Nevertheless, Russo and Associates engaged in a campaign still to this day to improperly use the Registered Trademarks and trade off the Domain Names. The Russo-managed Associates continues to hold itself out as THE SLOPPY TUNA. For example:

- A poster was published using the Registered Trademarks inviting persons to apply on Saturday, April 2, 2016 for jobs this summer as "bartenders, barbacks, servers, porters, and security." See Exhibit K, attached hereto. The text message reads: **"Hey, this is Sean from <u>the tuna</u>…."** The

10

    poster then impermissibly uses Plaintiff MUSA's THE SLOPPY TUNA trademark (USPTO Registration No. 422772). It also appears that a new e-mail address was created: s**loppytunali@gmail.com.** (*Id.*)

- The court-appointed receiver of Associates – Charles C. Russo – made it clear to the press in no uncertain terms that as the "operator of The Sloppy Tuna" that it was his "full intention to open on time and conduct business as usual." See Exhibit L, attached hereto. He was further quoted by 27East: **"Mr. Russo said the restaurant/bar will reopen this summer as The Sloppy Tuna."** (*Id.*)

- Registered the unauthorized domain www.lisloppytuna.com to promote the ongoing business of Associates. See Exhibit M, attached hereto.

- Without authorization, promoting and selling merchandise using the registered Trademarks. See Exhibit N, attached hereto.

- "Reopening" for business in May 2016, touting a new Instgram account "lisloppytuna" and promoting "free beer and wine" under new manager Jeff Capri "overseeing front of the house," and in apparent violation of the New York State Liquor Authority's Alcoholic Beverage Control Law § 117-a. See Exhibit O, attached hereto.

    39.    On May 20, 2016, Russo sought the formal secondary appointment of Syosset Middle School physical education teacher Jeff Capri (See Exhibit P, attached hereto) with experience managing The Bench Bar & Grill in Stony Brook, Long Island, as "highly appropriate and desirable" to manage Associates this summer and was "up to

11

the thankless task of running a company embroiled in litigation between its owners." See Exhibit Q, attached hereto. In support of this still pending application, Russo delivered:

- An "Operational Plan" from Mr. Capri that contained without authorization use of the Registered Trademarks. See Exhibit R, attached hereto; and

- A proposed "Management Agreement" that guaranteed Mr. Capri a payment of $220,000 for five months of services, and an additional $300,000 to the rest of his "Management Team" for the "thankless task" of running Associates this summer. See Exhibit S, p. 12, attached hereto.

40. For Memorial Day weekend, Associates opened for business without authorization as THE SLOPPY TUNA, and

- Announced via the unauthorized "lisloppytuna" Instagram account that "new VIP Bottle service" would be available for Memorial Day Weekend. See Exhibit T, attached hereto.

- The "Bottle Service Menu" contained the unauthorized use of one of the Registered Trademarks, and offered a bottle of "Absolute" (sp?) for $375, a case of beer for $250, and a "Fun Platter" of clam strips, fried mozzarella, chicken fingers and fried for $125. See Exhibit U, attached hereto. A "Sampler" at Capri's The Bench Bar & Grill goes for under $20. See Exhibit V, attached hereto.

- Charged patrons a "cover charge" of $40 – at times 2 or 3 times per day.

These "offerings" from the Russo-Capri managed Associates were never remotely done while Doscher was managing THE SLOPPY TUNA from 2011 through 2015. These

12

"offerings" are clearly intended to dilute and destroy the good will Doscher and MUSA built up over the last 5 successful summers.

41. Russo was appointed as a receiver for Defendant 148 South Emerson Associates, LLC. Plaintiffs do not object in this case as to that appointment. Plaintiffs takes no position as to how Russo wants to manages and operate 148 South Emerson Associates, LLC this summer – he just is not entitled to do it as THE SLOPPY TUNA. Nor use or trade off any of Plaintiffs' other Registered Trademarks or Domain Names.

### FIRST CLAIM FOR RELIEF BY MUSA
**(Federal Trademark Infringement under 15 U.S.C. §1114)**

42. Plaintiffs hereby reallege and incorporate by reference the allegations of each of the paragraphs of this Complaint as if fully set forth herein.

43. This is a claim for trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44. Defendant's unauthorized use of the Registered Trademarks in connection with the advertising and promotion of its goods and services is without permission, authority or consent of the Plaintiff MUSA and said use is likely to cause confusion, to cause mistake and/or to deceive.

45. Defendant's unauthorized use of the Registered Trademarks in connection with the advertising and promotion of its goods and services has been made willfully and deliberately notwithstanding Plaintiff MUSA's well-known and prior established rights in the Registered Trademarks and with both actual and constructive notice of Plaintiff MUSA's federal registration rights under 15 U.S.C. §1072.

46. Defendant's infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Plaintiff MUSA's

13

business, reputation and goodwill in the Registered Trademarks for which Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF BY MUSA
### (False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a))

47. Plaintiffs hereby reallege and incorporate by reference the allegations of each of the paragraphs of this Complaint as if fully set forth herein.

48. This is a claim for false designation of origin and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49. Defendant's unauthorized use of the Registered Trademarks constitutes a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion and to cause mistake, and to deceive as to the affiliation, connection or association of Defendant with Plaintiff MUSA and as to the origin, sponsorship, or approval of the infringing goods and commercial activities of Defendant by Plaintiff MUSA.

50. Defendant's selection and unauthorized use of the Registered Trademarks in connection with the advertising and promotion of its goods and services was done willfully, intentionally, and deliberately with full knowledge and willful disregard of Plaintiff MUSA's well-known, famous, and prior established rights in the Registered Trademarks.

51. As a direct and proximate result of Defendant's false designation of origin and unfair competition, Plaintiff MUSA has suffered, and unless enjoined by this Court will continue to suffer, monetary loss and irreparable injury and other damage to Plaintiff MUSA's business, reputation and goodwill in the Registered Trademarks for which Plaintiff has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF BY PLAINTIFFS
(Cybersquatting)

52. Plaintiffs hereby reallege and incorporate by reference the allegations of each of the paragraphs of this Complaint as if fully set forth herein.

53. Defendant has a bad faith intent to profit from the registration and use of the domain name www.lisloppytuna.com by creating an association with Plaintiff's famous THE SLOPPY TUNA trademark and the Domain Names, including www.thesloppytuna.com as to source and sponsorship.

54. The second-level domain name portion of the www.lisloppytuna.com domain name is confusingly similar to, and dilutes the distinctive quality of Plaintiff MUSA's famous THE SLOPPY TUNA trademark and the Domain Names, including www.thesloppytuna.com.

55. Plaintiffs have been damaged by Defendant's unlawful use of the www.lisloppytuna.com domain name and will suffer irreparable harm.

56. Defendant's acts are in violation of the Anticybesquatting Consumer Protection Act under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

### FOURTH CLAIM FOR RELIEF BY MUSA
(Trademark Dilution)

57. Plaintiffs hereby reallege and incorporate by reference the allegations of each of the paragraphs of this Complaint as if fully set forth herein.

58. Plaintiff MUSA's Registered Trademark THE SLOPPY TUNA is a famous mark and had become famous prior to Defendant's unauthorized use of the Registered Trademarks and the unlawful use of the www.lisloppytuna.com domain name in conjunction with the goods and services offered to the public by Associates.

59. Plaintiff MUSA's Registered Trademark THE SLOPPY TUNA is inherently distinctive to the public and the trade with respect to goods and services.

60. By such wrongful acts, Defendant has, and unless restrained by the Court, will continue to cause serious irreparable injury and damages to Plaintiff MUSA and to

the goodwill associated with the famous THE SLOPPY TUNA mark by diluting and blurring its distinctive quality.

61. Defendant's acts constitute willful dilution of Plaintiff's famous Registered Trademark THE SLOPPY TUNA in violation of the Federal Trademark Dilution Act, under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays for judgment against Defendant as follows:

A. That the Court enter judgment in favor of Plaintiffs and against the Defendant on all claims for relief alleged herein;

B. That a preliminary and permanent injunction issue pursuant to Section 34 of the Lanham Act (15 U.S.C. §1116) enjoining and restraining the Defendant and its, successors, assigns, officers, directors, agents, employees and attorneys, and all persons or entities in active concert, participation, or privity with any of them, from using, on or in connection with the manufacture, sale, importation, exportation, purchase, order, offer for sale, distribution, transmission, advertisement, display and promotion of any products or services, the Registered Trademarks or other marks that are confusingly similar to the Registered Trademarks;

C. That Defendant be ordered immediately to recall any and all infringing goods and any other packaging, containers, advertising or promotional material or other matter that displays the Registered Trademarks or other marks that are identical or substantially similar to the Registered Trademarks;

D. That Defendant be ordered to deliver to Plaintiffs for destruction any and

all infringing goods as well as any other packaging, containers, advertising or promotional material or other matter bearing the infringing marks pursuant to 15 U.S.C. §1118;

E. That Defendant be directed to file with this Court and serve on Plaintiffs within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which the Defendant has complied with the injunction pursuant to 15 U.S.C. §1116;

F. That Defendant be required to account to Plaintiffs for any and all profits derived by Defendant and all damages sustained by Plaintiffs by virtue of the actions of the Defendant complained of herein;

G. That Defendant be ordered to forfeit or cancel any infringing domain names as a consequence of the actions of the Defendant complained of herein pursuant to 15 U.S.C. §1125(d)(1)(C);

H. That Defendant be ordered to pay over to Plaintiffs any and all profits derived by Defendant and all damages which Plaintiffs have sustained as a consequence of the actions of the Defendant complained of herein pursuant to 15 U.S.C. §1117, subject to proof at trial;

I. That the damages resulting from the actions of the Defendant complained of herein be trebled pursuant to 15 U.S.C. §1117 and awarded to Plaintiffs;

J. That an award of interest, reasonable costs, expenses and attorneys' fees be awarded to Plaintiffs pursuant to 15 U.S.C. §1117;

K. That an award of interest, costs, and attorneys' fees incurred by Plaintiffs in prosecuting this action be awarded to Plaintiffs; and

    L.       That Plaintiffs be awarded all other relief to which Plaintiffs are entitled and such other and further relief as this Court may deem just.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues raised in the Complaint which are triable by a jury.

This 31st day of May, 2016.

                                    By:   /s/ Angelo Todd Merolla
                                    Angelo Todd Merolla (AM 6938)
                                    MEROLLA & GOLD, LLP
                                    75 14th Street, Suite 2130
                                    Atlanta, Georgia  30309
                                    Tel.: 404-888-3772
                                    Fax: 404-888-3737
                                    atm@merollagold.com
                                    Attorneys for Plaintiffs